# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 641 | DATE | 7/19/2002 |
| CASE TITLE | Jackson Natl Life v. Schultz, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant Teresa Ullsmith's Motion for Summary Judgment (#16-1);
Defendant Teresa Ullsmith's Motion to Strike (#21-1)
Defendant Linda Schultz's Motion for Summary Judgment (#19-1)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial [set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the attached reasons, Defendant Linda K. Schultz's Motion for Summary Judgment is **DENIED**, Defendant Teresa M. Ullsmith's Motion for Summary Judgment is **GRANTED**, and Teresa M. Ullsmith's Motion to Strike is **GRANTED** in part and **DENIED** in part. All pending dates and motions are terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 02 JUL 20 AM 15:20 | date mailed notice | |
| /r | courtroom deputy's initials | date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JACKSON NATIONAL LIFE INSURANCE COMPANY )
  Plaintiff                                            )
                                                    )NO. 01 C 641
v.                                                    )
                                                    )JUDGE WILLIAM J. HIBBLER
LINDA K. SCHULTZ and TERESA M. ULLSMITH )
  Defendants                                        )

## MEMORANDUM AND ORDER

The Court has before it Defendants' Cross-Motions for Summary Judgment regarding Plaintiff's complaint of interpleader, as well as Defendant Teresa M. Ullsmith's Motion to Strike portions of the Affidavits of Linda K. Schultz, Stephanie Ullsmith, and Theodore Osuch. Plaintiff Jackson National Life Insurance Company ("JNL") has asked the Court to determine whether life insurance proceeds made payable upon the death of Michael O. Ullsmith, Jr. ("the decedent") should be paid entirely either to Linda K. Schultz ("Linda") or to Teresa M. Ullsmith ("Teresa"). Jurisdiction is proper under 28 U.S.C. § 1332. The parties are diverse; Plaintiff is incorporated under the laws of the State of Michigan, with its principal place of business in Lansing, Michigan, Defendants are residents of the State of Illinois. The amount in controversy, i.e. the life insurance proceeds, exceeds $75,000 exclusive of interest and costs. All parties have fully briefed the issues;

1



they are thus ripe for adjudication.

For the reasons set forth below, Linda K. Schultz's Motion for Summary Judgment is **DENIED**, Teresa M. Ullsmith's Motion for Summary Judgment is **GRANTED**, and Teresa M. Ullsmith's Motion to Strike is **GRANTED** in part and **DENIED** in part.

### Background

On October 3, 1994, the decedent purchased a $100,000 life insurance policy from JNL, naming his mother Linda the sole beneficiary. The policy included provisions governing changes in ownership and beneficiaries. The provision entitled CHANGE OF OWNERSHIP stated: "The ownership of this Policy may be changed at any time during the Insured's lifetime. Such change **must** be made by written notice acceptable to the Company" (emphasis added). An amending endorsement to the provision entitled HOW PREMIUMS ARE PAYABLE stated, "The Owner may request a change in the frequency of premium payments. Such a request **must** be in writing and must be approved by the Company" (emphasis added). However, the provision entitled HOW BENEFICIARY MAY BE CHANGED stated in relevant part, "While this Policy is in force, the Owner **may** change the Beneficiary, unless otherwise provided by endorsement, by filing at the Home Office of the Company an acceptable written request" (emphasis added). According to Carla Beatty, JNL's director of operations for the midwestern and western United States, JNL does

2

not exclusively require written change of beneficiary requests, and has accepted such requests by telephone. (Beatty Dep. 13, 17, 18.)

The decedent met Teresa in September of 1994. She gave birth to their son, Ryan Ullsmith ("Ryan"), on November 23, 1995, and they were married on November 28, 1995. The couple moved to Teresa's home in South Chicago Heights shortly after their wedding. During the time period relevant to this matter, however, Michael maintained ownership of and received mail at his premarital residence in Joliet, Illinois.

JNL records indicate the decedent telephoned JNL on November 30, 1995, and requested a change in beneficiary. JNL telephone security protocol requires their telephone representatives to request the caller's policy number, then to verify the caller's identity by requesting either the caller's social security number or date of birth. (Beatty Dep. 18.) In accordance with company policy as described by Ms. Beatty (Beatty Dep. 19), JNL automatically sent a letter dated November 30, 1995 to Michael's Joliet address. This letter confirmed the beneficiary changes, listing Teresa as the primary beneficiary and Linda as the contingent beneficiary. The letter did not indicate any further action was necessary, and concluded, "If you have any questions, or need additional information, please contact our Service Center". JNL did not receive any response to this confirmation letter.

3

The decedent and Teresa divorced on June 25, 1999. During their marriage, the decedent and Teresa maintained separate checking accounts, and did not jointly own any property. The decedent executed a will in January 1992, devising his estate to Linda. During their marriage, Teresa suspected the decedent was engaging in an adulterous relationship with a previous girlfriend. The decedent died in a motorcycle accident on October 21, 2000.

Linda challenges the validity of the beneficiary change, and maintains she should still be the sole beneficiary of the decedent's life insurance policy. Linda argues Teresa cannot establish the "substantial compliance" with policy provisions necessary to effect a valid change of beneficiary. Specifically, Linda questions the certainty with which Teresa can establish the decedent's intent to change beneficiaries. Linda maintains Teresa may have employed surreptitious means to change the beneficiary of the decedent's life insurance policy, therefore maintaining the decedent may not have taken any steps to make these changes himself. Linda asks the Court to consider the possibility that Teresa, who knew the decedent's date of birth and social security number, instructed a male friend to call and impersonate the decedent. Linda offers as further support for this theory the fact the November 30, 1995 confirmation letter from JNL has not been found among the decedent's records, and alleges Teresa could have

4

intercepted this letter.  Linda also maintains Teresa resented the decedent's apparent extra-marital affair and Teresa's absence from the decedent's will or any joint property ownership arrangements, and offers this resentment as evidence of Teresa's motive to make herself the beneficiary.  Teresa challenges this allegation as mere suspicion and conjecture.  JNL filed a claim for interpleader with this Court, and was granted leave to deposit the policy proceeds plus all accrued interest due.  Linda and Teresa have each filed Claims for Interpleader of Funds and Motions for Summary Judgment in regards to their claims.  Teresa also filed a Motion to Strike portions of affidavits attached in support of Linda's Motion for Summary Judgment.

**Standard of Review**

Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, the court concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992).  The interpretation of an insurance policy is a question of law that is an appropriate subject for disposition by summary judgment.  *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000).  To determine whether any genuine fact exists, the Court must assess the proof as presented in

5

depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56(c). The Court will draw all reasonable inferences in favor of the non-moving party; however, the Court is "not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1998). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). To avoid summary judgment, then, the nonmoving party must set forth more than some metaphysical doubt as to material facts. *Mills v. First Fed. Sav. and Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir. 1996).

### Defendants' Motions for Summary Judgment

A party asserting a change of beneficiary has occurred must establish "substantial compliance" by the insured, showing: (1) the certainty of the insured's intent to change his beneficiary and (2) the insured did everything he could have reasonably done under the circumstances to carry out that intention. *Aetna Life Ins. Co. v. Wise*, 184 F.3d 660, 663 (7th Cir. 1999); *Dooley v. James A. Dooley Assocs. Employees Ret. Plan*, 92 Ill.2d 476, 486, 442 N.E.2d 222, 226, 227 (1982). Although life insurance provisions "invariably" require written beneficiary designations be received by the

6

insurance company to be effective, "courts often relax this requirement considerably in the name of substantial compliance." *Prudential Ins. Co. of America v. Parker*, 840 F.2d 6, 7 (7th Cir. 1988). Therefore, "'(w)here [the] insured takes a positive action which evidences his obvious desire for a change in beneficiary, the courts will adopt such construction as will assist in carrying out such intention.'" *Conn. Gen. Life Ins. Co. v. Gulley*, 668 F.2d 325, 328 (7th Cir. 1982) (quoting 2 Appleman, Insurance Law and Practice § 963 (1941)).

There is no dispute the decedent did not submit a written change request to JNL. Generally in substantial compliance cases, the insured submitted or at least executed a written change of beneficiary request, but some fortuity or technical deviation prevented strict compliance with policy provisions.[1]

However, this case also involves a uniquely liberal policy provision for beneficiary changes. Life insurance policy provisions requiring written requests for beneficiary changes typically do so in a decidedly unambiguous manner.[2] In this case,

---
[1] *See, e.g., Aetna*, 184 F.3d at 662 (finding substantial compliance despite the decedent's failure to fill out all parts of a "confusing" annual enrollment form); *Conn. Gen. Life Ins. Co.*, 668 F.2d at 326, 328 (finding substantial compliance although the decedent, because of his unexpected death, failed to personally deliver his executed change of beneficiary form to his employer); *Dooley v. James A. Dooley Assocs. Employees Ret. Plan*, 100 Ill. App. 3d 389; 426 N.E.2d 1028 (1982).
[2] *See, e.g., Dooley*, 442 N.E.2d at 225 ("A Participant may designate the beneficiary of his choice . . . The Beneficiary Designation must be in writing and filed with the company."). In another instance, the insurance provider sent a confirmation letter reiterating the requirements: "Please remember that if in the future you enroll in a plan requiring a beneficiary designation, or

7

however, the decedent's policy with JNL provided only that policy owners "may" change beneficiaries by filing written requests. This provision does not clearly declare written requests to be the exclusively valid method of effecting beneficiary changes. The permissive nature of this provision is made more clear when compared to the provisions governing changes of ownership and premium payments, and even more so in light of Ms. Beatty's deposition testimony. Therefore, written change requests may not have been a component of even "strict compliance" with JNL's change of beneficiary provisions.

Regardless, the decedent at the very least "substantially complied" with JNL's change of beneficiary provision. JNL records indicate the decedent telephoned JNL, followed the authorization protocol, and informed the JNL telephone representative of the desired changes. The JNL representative then entered those changes, and sent a confirmation letter to the decedent. This letter notified him of the change, clearly indicated the new beneficiary arrangement, did not indicate any need for further action, and provided the decedent with a telephone number he could use to voice concerns or ask questions. Between the November 30, 1995 date of the letter and his death in October of 2000, the

---

if you want to change your beneficiaries, you must submit another form at that time." *Metro. Life Ins. Co. v. Johnson*, No. 00 C 2138, 2001 WL 831366, at *2 (N.D. Ill. July 23, 2001).

8

decedent did not call JNL with any questions or concerns regarding this confirmation letter. This establishes the decedent's intent to change the beneficiary of his policy, and shows the decedent did "everything he could have reasonably done under the circumstances" to change the beneficiary. *Aetna*, 184 F.3d at 663. The confirmation letter from JNL would relieve any reasonable concern that further action was necessary; the decedent did "everything within his power" to manifest his intent to change beneficiaries. *Id.* at 665.

Linda questions the certainty with which it can be determined the decedent himself called JNL and directed the change of beneficiary. Linda raises the possibility that Teresa instructed a male friend to make this call, and provided him with the date of birth and/or social security number necessary to complete the authorization process. Linda argues Teresa resented the decedent's "continuation of his relationship with a former girlfriend and may have further resented [the decedent's] refusal to contribute any of his property or income to the marriage." (Linda Mem. Supp. Summ. J. at 5.) Linda further contends Teresa demonstrated a pattern of "little regard" for the decedent's intentions or privacy. *Id.* However, Linda does not provide factual support for this speculation, and has therefore not alleged any more than "metaphysical doubt" as to these material facts. *Mills*, 83 F.3d at

9

840. As such, Linda fails to create a genuine issue of material fact or to impeach the certainty of the decedent's intent to change beneficiaries. *See David v. Combes, etal.*, No. 00-3910, 2002 WL 1396515, at *5 (7th Cir. June 28, 2002)(Slip Copy)(quoting *Monninger v. Koob*, 405 Ill. 417, 91 N.E.2d 411, 415 (Ill. 1950))("The Illinois Supreme Court has long warned that testimony from interested parties regarding what a deceased individual has said is 'subject to great abuse and will be carefully scrutinized when considered with the other evidence in the case.'") .

Therefore, as a matter of law, the decedent validly executed the change of beneficiary from Linda to Teresa. Accordingly, Linda's Motion for Summary Judgment is **DENIED**, and Teresa's Motion for Summary Judgment is **GRANTED**.

## TERESA'S MOTION TO STRIKE

Teresa also moved to strike portions of affidavits attached to Linda's Motion for Summary Judgment, maintaining they contain inadmissible hearsay. Supporting and opposing affidavits considered by a court must set forth such facts as would be admissible in evidence. Fed. R. Civ. P. 56(c). The district court has broad discretion in determining the admissibility of evidence. *Aetna*, 184 F.3d at 665. Hearsay is a statement, other than that made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted, and

is generally inadmissible. Fed. R. Evid. 801(c). Statements comprising admissions by a party-opponent and statements of the declarant's then existing state of mind or intention are among the exceptions to the hearsay rule. Fed. R. Evid. 801(d)(2); Fed. R. Evid. 803(3).

None of Linda's statements in the first or last sentences of Paragraph 8 or the first sentence of Paragraph 9, fall within the hearsay exceptions of the Federal Rules of Evidence. Her statement that the decedent "told me that he was very concerned about Teresa's habit of accessing his answering machine and intercepting his mail" is offered not to establish his state of mind in relation to his life insurance policy, but to prove the truth of the assertion that Teresa employed surreptitious methods to make changes to the decedent's policy provisions. Linda's remaining statements are more clearly outside of the hearsay exceptions, and Teresa's Motion to Strike the first and last sentences of Paragraph 8 and the first sentence of Paragraph 9 of the Affidavit of Linda Schultz is **GRANTED**. *See Davis*, 2002 WL 1396515, at *5.

The fourth sentence of Paragraph 2 of the Affidavit of Stephanie Ullsmith, however, is within the hearsay exception of Federal Rule of Evidence 803(3). Her statements that the decedent told her he was "mad at our mother, Linda, for buying things for Teresa's house . . . that he didn't want Teresa to get a dime of

11

his family's money . . . He said he was going to change the beneficiary on his life insurance from Linda to me" are evidence of his state of mind and intent with regards to this policy, and Teresa's Motion to Strike these sentences is **DENIED**. Her statement in the first sentence of Paragraph 7 that the decedent told her in numerous conversations that "Teresa was harassing him on the phone and that she was breaking into his house, reading his mail, and going through his belongings," is similar to the first offending sentence of Linda's Affidavit, and Teresa's Motion to Strike this sentence is **GRANTED**.

The last sentence of Paragraph 3 of the Affidavit of Theodore Osuch is offered to establish the intent of the decedent with respect to his policy provisions, and Teresa's Motion to Strike this sentence is **DENIED**. The second and third sentences of Paragraph 7 are statements allegedly made by Teresa, a party-opponent, and Teresa's Motion to Strike these sentences is also **DENIED**. However, the second sentence of Paragraph 9, and all of Paragraphs 10 and 11, do not fall within any of the hearsay exceptions, and Teresa's Motion to Strike these portions of the Affidavit of Theodore Osuch is **GRANTED**.

## CONCLUSION

For the reasons stated above, this Court **DENIES** Linda K. Schultz's Motion for Summary Judgment, **GRANTS** Teresa M. Ullsmith's

12

Motion for Summary Judgment, and **GRANTS** in part and **DENIES** in part

Teresa M. Ullsmith's Motion to Strike, as noted above.

**IT IS SO ORDERED.**
**DATE:** July 19, 2002

_____
Hon. William J. Hibbler
**United States District Court Judge**